UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 1: 21-575 (JDB) |
| | : |
| DAVID JOHN LESPERANCE, CASEY CUSICK, and JAMES VARNELL CUSICK, JR., | : |
| | : |
| Defendants. | : |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS**

Defendants David John Lesperance, Casey Cusick, and James Varnell Cusick, who are charged with committing four offenses at the U.S. Capitol on January 6, 2021, allege that the government has impermissibly prosecuted them in violation of their First Amendment rights. ECF No. 45. The defendants' arguments lack merit, and their motion should be denied.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage. While the certification process was proceeding, a large crowd gathered outside the United States Capitol and entered the restricted grounds. Law enforcement struggled to maintain control of the growing crowd, as individuals forced their way through, up, and over barricades and advanced to the Capitol's exterior. Officers then attempted to stop the crowd from entering the Capitol building. Around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol building, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. At

2:20 p.m., members of Congress and the Vice President evacuated the House and Senate chambers. The joint session remained suspended until 8:00 p.m. In the intervening period, scores of individuals entered the building without authority.

For their part, the defendants traveled from Florida to Washington, D.C. on January 5, 2021, and attended former President Trump's speech at the Ellipse on January 6. The defendants then went to the U.S. Capitol. As they approached the Capitol building, the defendants waled by unmistakable signs that they were not allowed to be within that restricted area, including, but not limited to, officers carrying shields and batons and at least one officer deploying a "flashbang" device. Shortly after 3 pm, the defendants entered the Capitol building through the Senate Wing Door, which had previously been breached by other rioters. By then, two windows adjacent to the Senate Wing Door had been smashed by other rioters. The defendants nonetheless proceeded to enter the Capitol building, joining a large mob of rioters in that area. The defendants then spent several minutes roaming the halls of the Capitol building, where the Joint Session was supposed to convene to certify the Electoral College vote. The defendants exited the Capitol building several minutes later. U.S. Capitol video surveillance confirmed that the defendants entered the U.S. Capitol building in the afternoon of January 6. They returned to Florida two days later, on January 8, 2021.

Based on their actions on January 6, 2021, the defendants are charged with four offenses: (1) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1); Knowingly Engaging in Disorderly or Disruptive Conduct in any Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading,

Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF No. 1.

## ARGUMENT

The defendants seek dismissal of the criminal information against them. With respect to Count One, they contend that "no law of Congress … makes the Capitol a restricted building" for purposes of 18 U.S.C. § 1752(a)(1) and that Congress could not "lawfully deny access to the Capitol in such a way." ECF No. 45 at 3-5. With respect to Counts Two and Three, they contend that Section 1752(a)(2)'s and Section 5104(e)(2)(D)'s prohibitions on disorderly and disruptive conduct "conflict with the [d]efendants' rights and duties under the First Amendment to speak freely, assemble with others, and petition for redress of grievances at the U.S. Capitol." *Id.* at 6-9. With respect to Count Four, they assert that 40 U.S.C. § 5104(e)(2)(G), which prohibits parading, demonstrating, or picketing in a U.S. Capitol Building, violates the First Amendment. These challenges fail.

**I.   Legal Standards**

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the

allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

## II.     The Defendants' Challenge to 18 U.S.C. § 1752(a)(1) Fails

Section 1752(a)(1) authorizes the prosecution of any individual who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1).  The term "restricted buildings or grounds" refers to, among other places, "any posted, cordoned off, or otherwise restricted area … of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).  Because the U.S. Capitol building was restricted on January 6 due to the attendance of the Vice President and his family (all of whom were Secret Service protectees), judges of this Court have recognized that the U.S. Capitol qualified as a "restricted building." *See, e.g.*, *United States v. Rodriguez*, No. 21-cr-246, 2022 WL 3910580, at *16-18 (D.D.C. Aug. 31, 2022); *United States v. Bingert*, No. 1:21-cr-91, 2022 WL 1659163, at *15-16 (D.D.C. May 25, 2022); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *16-19 (D.D.C. Mar. 19, 2022); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022); *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *20-22 (D.D.C. Feb. 1, 2022).

So too here. Count One alleges that, on January 6, the defendants "knowingly enter[ed] and remain[ed] in the United States Capitol, a restricted building, without lawful authority to do so." ECF No. 1 at 1.  Because this count alleges each element of Section 1752(a)(1), no infirmity exists.

The defendants respond that "no law of Congress … makes the Capitol a restricted building." ECF No. 45 at 3. But, as just explained, the U.S. Capitol building qualified as a "restricted building" on January 6 under Section 1752(c)(1)(B) due to the Vice President's attendance and participation in the joint congressional session.

4

The defendants next insist that Congress could not "lawfully restrict the Capitol in such a way." ECF No. 45 at 3.  This conclusory assertion, however, necessarily presumes the U.S. Capitol building's status as a public forum for public entry and expression on January 6. As explained below, the opposite is true; the U.S. Capitol building is a non-public forum and the defendants had no First Amendment right to access it.  *See infra* pp. 5-9; *see also U.S. Postal Service v. Greenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government.").

Finally, the defendants reference a general posting on the U.S. Capitol website stating that "[t]he Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday." ECF No. 45 at 4-5.  Based on that statement, they contend that the entire U.S. Capitol building was necessarily open and accessible to the public on January 6 and/or that the defendants subjectively held such a belief.[1]  The defendants are, of course, free to raise a defense at trial that they lacked knowledge that the building was restricted.  But such a factual dispute is for trial; it is not an appropriate basis to seek dismissal of the charge.  *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Jackson, J.) ("When testing the sufficiency of the charges in an indictment … the allegations therein must be accepted as true.") (cleaned up).  The question here is whether the information adequately alleges each element of a Section 1752(a)(1) offense.  Because the answer is yes, the motion to dismiss should be denied.

---

[1] The defendants did not enter the Capitol building through the Visitor Center.  They entered through the Senate Wing Door on the northwest side of the U.S. Capitol Building.  *See United States v. David John Lesperance*, No. 21-cr-439, ECF No. 1-1 at 4-5 (June 21, 2021); *United States v. James Varnell Cusick*, No. 21-cr-441, ECF No. 1-1 at 6 (June 21, 2021); *United States v. Casey Cusick*, No. 21-cr-440, ECF No. 1-1 at 6 (June 21, 2021).

### III.     The Defendants' Constitutional Challenge to 40 U.S.C. § 5104(e)(2)(G) Fails

Section 5104(e)(2)(G) makes it a crime to "willfully and knowingly … parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G). The defendants contend that this statute's prohibition on such activities in the U.S. Capitol building violated their First Amendment rights. ECF No. 45 at 9-14. Their argument lacks merit.

1.     The First Amendment principles that govern the defendants' claim are well settled. A private speaker's right to access government property for expressive activity depends on whether the government has created a forum for expression, and if so, what type of forum. "Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Restrictions on expression in traditional public fora must be narrowly drawn to achieve a compelling state interest. *Id.*; *see International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) (*ISKCON*). The same test applies to designated public fora, property that the State has opened for expressive activity by part or all of the public. *Id.* For "all remaining public property," limitations on expressive activity are subject to a "much more limited review." *Id.* at 678-679. As long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view, the challenged regulation need only be reasonable. *Id.* at 679.

In examining whether a forum is public, courts look to the purpose, history, and location of the forum. *See ISKCON*, 505 U.S. at 679-680. Because the government, like other property owners, may "'preserve the property under its control for the use to which it is lawfully dedicated,' the government does not create a public forum by inaction." *Id.* (quoting *Greer v. Spock*, 424 U.S. 828, 836 (1976) (internal citation omitted)). The government also does not create a public forum

"whenever members of the public are permitted freely to visit a place" that it owns or operates. *Greer*, 424 U.S. at 836.  Rather, "[t]he decision to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'"  *ISKCON*, 505 U.S. at 680 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).

      2.      As this Court and several other judges in this district have correctly held, "the inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); *see also United States v. Nassif*, No. 21-cr-421, __ F. Supp. 3d __ (D.D.C.) (ECF No. 42, at 8-9) (Bates, J.) (same); *United States v. Seitz*, No. 21-cr-279 (D.D.C.) (ECF No. 51, at 14) (Friedrich, J.) (same). In *Byrum*, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators."  93 F. Supp. 2d at 55.  Those controls "exclude[] [the building's] classification as a traditional public forum." *Id.* at 56.  Judge Friedman also rejected the U.S. Capitol building's classification as a designated public forum, observing that "the inside of the Capitol is not open to meetings by the public at large" and "[t]he government has a legitimate interest in ensuring that the activities of Congress proceed without disruption." *Id.*  This Court recently reached the same conclusion in *Nassif*—a January 6 case, like this one—holding that "the interior of the Capitol building is a nonpublic forum where the government may limit First Amendment activities so long as the restrictions 'are reasonable in light of the purpose of the forum and are viewpoint neutral.'" *Nassif*, *supra*, ECF No. 42, at 7.

      Section 5104(e)(2)(G) easily clears that standard, as this Court has held.  As this Court explained in rejecting the same First Amendment challenge that the defendants rehash in this case, "[t]he statute contains nothing limiting its application to a particular viewpoint" and "targets

7

activities that Congress reasonably could have concluded would disrupt its legislative process." *Nassif, supra*, ECF No. 42, at 9; *see also Seitz, supra*, ECF No. 51, at 14 ("The statute does not discriminate based on the message of the demonstration, and by targeting noticeable public displays of multiple people, it is reasonably calculated to protect the orderly function of Congress."). Nothing warrants a different result in this case. This Court should therefore reject the defendants' First Amendment challenge to Section 5104(e)(2)(G).

3. In response, the defendants assert that they have a First Amendment "right to petition and speak out against abuses of power in the Capitol." ECF No. 45 at 10. But, as just explained, the U.S. Capitol building is a non-public forum and "there is no First Amendment right to express one's self in a nonpublic area." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016).

The defendants also cite instances in which courts have reviewed regulations restricting protests or other activity on public roads and sidewalks. ECF No. 45 at 11-12; *see, e.g.*, *Madsen v. Women's Health Center*, 512 U.S. 753, 768-770 (1994) (affirming constitutionality of 36-foot buffer zone around clinic entrances and driveway); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1036-1042 (7th Cir. 2002) (invalidating municipal peddling ban on public sidewalks within 1,000 feet of an arena); *Blair v. City of Evansville*, 361 F. Supp. 2d 846, 858-859 (S.D. Ind. 2005) (holding unconstitutional restriction that limited protestors to location 500 yards away from entrance to building where Vice President Cheney appeared). But all of those cases involved restrictions on expressive activity *in a public forum* and, accordingly, the courts evaluated whether the restrictions were "reasonable restrictions on the time, place, or manner of protected speech," that were "narrowly tailored to serve a significant governmental interest," and "lef[t] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491

8

U.S. 781, 791 (1989).  The U.S. Capitol building, in contrast, is a *non*-public forum.  To pass First Amendment scrutiny, Section 5104(e)(2)(G)'s prohibition on parading, demonstrating, and picketing in the U.S. Capitol building need only be viewpoint neutral and a reasonable means of advancing the purpose of this forum: housing the legislative functions of Congress. As this Court correctly held in *Nassim*, Section 5104(e)(2)(G) plainly clears those minimal hurdles.

The defendants also cite the D.C. Circuit decision in *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002), which deemed the U.S. Capitol front sidewalk as a public forum and invalidated a leafleting restriction at that location.  If Section 5104(e)(2)(G) criminalized parades, demonstrations, or picketing on the sidewalk, *Lederman* might be relevant to the defendants' claim.  Section 5104(e)(2)(G), however, applies only to "Capitol Buildings," and not to the grounds and sidewalks surrounding them.  *See Nassif*, *supra*, ECF No. 42 at 6-7 (rejecting similar argument because it "ignore[d] the six words following th[e statute's] verbs: 'in any of the Capitol Buildings.'  Section 5014(e)(2)(G) thus bars parading, picketing, or demonstrating only within the Capitol buildings themselves, rather than on the Capitol grounds.").  *Lederman* is therefore inapposite.

**IV.   The Defendants' Constitutional Challenges to 18 U.S.C. § 1752(a)(2) and 40 U.S.C. § 5104(e)(2)(D) Also Fail**

Section 1752(a)(2) makes it a crime to "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage[] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(2).  Section 5104(e)(2)(D) makes it a crime, as charged in this case, to "willfully and knowingly … engage in disorderly or disruptive conduct, at any place … in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct

9

of a session of Congress or either House of Congress." 40 U.S.C. § 5104(e)(2)(D). The defendants contend that these statutes' prohibition on disorderly and disruptive conduct violates the First Amendment. ECF No. 45 at 5-9. The defendants' claim lacks merit, as Judge Contreras recently held in *United States v. Rhine*, No. 21-cr-687 (RC), ECF No. 79 at 24-25, 33-35 (D.D.C. Jan. 24, 2023).

1. The defendants' claim fails, at the threshold, for essentially the same reasons already discussed in Part III above. Section 1752(a)(2)—the offense charged in Count Two—applies only to conduct that occurs in, or in close proximity of, a "restricted building or grounds." That locational requirement, in turn, requires, as relevant here, proof that the area was "posted, cordoned off, or otherwise restricted" and that the area itself is within a "building or grounds where the President or other person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Such a "posted, cordoned off, or otherwise restricted" area is, by definition, a non-public forum for First Amendment purposes. Similarly, as for Count Three, although 40 U.S.C. 5104(e)(2)(D) could in theory be applied to conduct occurring outside the Capitol building (but still within Capitol grounds), that is not what Count Three charged the defendants with in this case. Count Three charges the defendants with violating 40 U.S.C. 5104(e)(2)(D) based exclusively on their conduct "in any of the Capitol Buildings." ECF No. 1 at 2. As explained above (*see supra* pp. 6-9), the Capitol building itself is a non-public forum. Counts Two and Three, therefore, need only clear the low hurdle applicable to non-public forums. For the same reasons discussed above in connection with Section 5104(e)(2)(G), they plainly do.

2. In any event, even if considered under the standards applicable to public fora, the defendants' claim would fail. By their plain term, the operative prohibitions in Sections 1752(a)(2) and 5104(e)(2)(D)—prohibitions on "disorderly or disruptive" conduct—target conduct, not

speech. *See Rhine*, *supra*, ECF No. 79 at 24-26, 33-35.  Insofar as the targeted conduct entails protected expressive activity, moreover, the prohibitions are plainly content-neutral, as they are "'agnostic as to content.'"  *Id.* at 33 (quoting *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin*, 142 S. Ct. 1464, 1471 (2022)); *see also id.* at 26.  Accordingly, to the extent the statutes' restrictions were applied (unlike here) in a public forum, they would need to satisfy only intermediate scrutiny.  *See id.*  Under intermediate scrutiny, statutes are constitutional so long as they "'further[] an important or substantial government interest' that is 'unrelated to the suppression of free expression,' any incidental restriction on protected expressive activity is 'no greater than is essential to the furtherance of that interest,' and [they] 'leave[] open ample alternative channels for communication.'"  *Id.* at 33-34 (quoting *Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001-1002 (D.C. Cir. 2014), in turn quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

Sections 1752(a)(2) and 5104(e)(2)(D) easily satisfy these requirements, as the *Rhine* court correctly concluded.  *See Rhine*, *supra*, ECF No. 79 at 24-26, 34-36.  With respect to the government's interest, "'[i]t is well established that "ensuring public safety and order" is a significant government interest,' and '[t]hat interest is amplified near the Capitol … where prominent public officials are present and conducting official government business.'"  *Id.* at 34 (quoting *Mahoney v. United States Capitol Police Bd.*, 566 F. Supp. 3d 1, 9 (D.D.C. 2022)).  Indeed, as Judge Contreras recently found, "[i]f there was any doubt, the events of January 6"— the very riot that the defendants helped fuel—"clearly show that [Section 5104(e)(2)(D)] furthers this important government interest."  *Id.*  The same is true of the similar prohibition in 18 U.S.C. § 1752(a)(2).

11

The statutes also easily satisfy the tailoring requirements of intermediate scrutiny. In addition to being limited to conduct that is "disruptive" or "disorderly," Section 1752(a)(2) and Section 5104(e)(2)(D) each require proof of additional elements limiting the statutes' respective reach. Section 1752(a)(2) requires proof of the defendants' "intent to impede or disrupt the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). In addition, the conduct must "in fact[] impede[] or disrupt[] the orderly conduct of Government business or official functions." *Id.* As relevant here, then, Section 1752(a)(2) targets only conduct that (i) occurs within (or in in proximity to) a restricted area where a Secret Service protectee is temporarily visiting; *and* (ii) is intended to "impede or disrupt the orderly conduct of Government business or official functions"; *and* (iii) in fact "impedes or disrupts the orderly conduct of Government business or official functions." Furthermore, Section 1752(a)(2)—which leaves conduct that is not disorderly or disruptive unregulated—plainly leaves open ample alternative channels of communications. The statute would, therefore, satisfy the tailoring requirements of intermediate scrutiny (if they applied).

Section 5104(e)(2)(D) would also satisfy these tailoring requirements. As Judge Contreras recently explained in *Rhine*,

> [i]n stark contrast to the "virtually per se ban on expressive activity" on the Capitol grounds that the D.C. Circuit declared unconstitutional for lack of narrow tailoring in *Lederman v. United States*, 291 F.3d 36, 45 (D.C. Cir. 2002), § 5104(e)(2)(D)'s prohibition on expressive activity is tethered to a requirement that the individual have the intent to "impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building" of congressional committees. Indeed, the *Lederman* court *explicitly cited* the predecessor statute to § 5104(e)(2)(D), which is substantively identical to the present version, as an example of a "substantially less restrictive alternative[] that would equally effectively promote safety." *Lederman*, 291 F.3d at 45 (cleaned up); *see also Mahoney*, 566 F. Supp. 3d at 10-11 (distinguishing *Lederman* on similar

grounds). For the same reason, the Court is satisfied that any incidental restriction on protected expression caused by § 5104(e)(2)(D) is no greater than necessary.

> grounds). For the same reason, the Court is satisfied that any incidental restriction on protected expression caused by § 5104(e)(2)(D) is no greater than necessary.
>
> Finally, § 5104(e)(2)(D) leaves open ample alternative channels of communication. The *Lederman* court suggested that exemptions for "expressive tee-shirts and buttons" amid an otherwise "total restriction" on speech "may establish that it leaves open ample alternative channels of communication." *Lederman*, 291 F.3d at 45 (cleaned up). By contrast, here, *all* speech that is not loud, threatening, or abusive is permissible, as is all conduct that is not disorderly or disruptive. Accordingly, because individuals "remain[] free to engage in a rich variety of expressive activities, " *Mahoney v. United States Capitol Police Bd.*, 566 F. Supp. 3d 1, 11 (D.D.C. 2022) (quotation omitted), § 5104(e)(2)(D) is a facially constitutional time, place, or manner regulation.

*Rhine*, *supra*, ECF No. 79 at 34-35.[2] This Court should reach the same conclusion in this case.

3. The defendants' counterarguments have no merit. Relying on *Brandenburg v. Ohio*, 395 U.S. 444 (1969) and its progeny, the defendants assert that Counts Two and Three violate their First Amendment rights because they did not advocate "'imminent lawless action,'" "fighting words," or "violent conduct." But that contention merely disregards the distinction between statutes that criminalize speech itself and statutes that criminalize conduct. *Brandenburg* addresses the former. *See id.* at 447 ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). This case involves only the latter. The Information does not charge the defendants with crimes based on their speech—*i.e.*, based on what the defendants said

---

[2] To be clear, the *Rhine* court did not conclude that intermediate scrutiny would apply where, as in Count Three of the Information, the defendant is charged based exclusively on conduct that occurred within the Capitol building. *Rhine* considered intermediate scrutiny only because the defendant in that case asserted an overbreadth challenge, which in turn required an assessment of the statute's "legitimate sweep" in all its applications, not just as applied in the particular case. *Rhine*, *supra*, ECF No. 79 at 30 & n.10.

or communicated. Sections 1752(a)(2) and 5104(e)(2)(D) prohibit—and the Information charges the defendants with engaging in—"disorderly and disruptive *conduct*." ECF No. 1 at 1-2 (emphasis added). So the statutes raise no concern under *Brandenburg*—which, again, considered only which type of advocacy retains First Amendment protection in the first place—or any related case. The only relevant First Amendment principles are those discussed above: (i) whether the Capitol building constitutes a public or non-public forum; and (ii) whether Section 1752(a)(2) and Section 5104(e)(2)(D) satisfy the standards applicable to expressive conduct within that forum.

Finally, the defendants assert that "[t]he right to engage in activities protected by the First Amendment implicitly includes the right to associate with others in pursuit of a wide range of 'political, social, economic, educational, religious, and cultural' goals." ECF No. 45 at 6 (quoting *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958)). In a similar vein, they mention their right to petition the Government. *Id.* at 7. None of these contentions, which the defendants advance only cursorily, have merit. The fact that the defendants have a right to associate with like-minded individuals, or to petition the Government, does not give them authority to do so wherever they want, whenever they want. As explained above, Section 1752(a)(2)'s and Section 5104(e)(2)(D)'s carefully calibrated prohibitions on disorderly and disruptive conduct easily satisfy any standard of scrutiny applicable in this case. The First Amendment requires nothing more.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss should be denied.

February 24, 2023	Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      UNITED STATES ATTORNEY
                                      D.C. Bar No. 481052

By:	*/s/ Francesco Valentini*
       Francesco Valentini
       D.C. Bar No. 986769
       Trial Attorney
       United States Department of Justice, Criminal Division
       Detailed to the D.C. United States Attorney's Office
       601 D Street NW
       Washington, D.C.  20530
       (202) 598-2337
       francesco.valentini@usdoj.gov