UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 1: 21-575 (JDB) |
| : | |
| DAVID JOHN LESPERANCE, CASEY : | |
| CUSICK, and JAMES VARNELL : | |
| CUSICK, JR., : | |
| : | |
| Defendants. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants David John Lesperance, Casey Cusick, and James Varnell Cusick, who are charged by Information with committing four offenses at the U.S. Capitol on January 6, 2021, allege that the charges against them should be dismissed "based on their failure to state a claim and failure to give notice of the charges in the indictment, as well as lack of probable cause." ECF No. 47 at 1. In the alternative, the defendants "ask for a preliminary hearing to determine if probable cause exists." *Id.* The defendants' arguments are procedurally flawed and substantively meritless.

### BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage. While the certification process was proceeding, a large crowd gathered outside the United States Capitol and entered the restricted grounds. Law enforcement struggled to maintain control of the growing crowd, as individuals forced their way through, up, and over barricades and advanced to the Capitol's exterior. Officers then attempted

1

to stop the crowd from entering the Capitol building. Around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol building, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. At 2:20 p.m., members of Congress and the Vice President evacuated the House and Senate chambers. The joint session remained suspended until 8:00 p.m. In the intervening period, scores of individuals entered the building without authority.

For their part, the defendants traveled from Florida to Washington, D.C. on January 5, 2021, and attended former President Trump's speech at the Ellipse on January 6. The defendants then went to the U.S. Capitol. As they approached the Capitol building, the defendants walked by unmistakable signs that they were not allowed to be within that restricted area, including, but not limited to, officers carrying shields and batons and at least one officer deploying a "flashbang" device. Shortly after 3 pm, the defendants entered the Capitol building through the Senate Wing Door, which had previously been breached by other rioters. By then, two windows adjacent to the Senate Wing Door had been smashed by other rioters. The defendants nonetheless proceeded to enter the Capitol building, joining a large mob of rioters in that area. The defendants then spent several minutes roaming the halls of the Capitol building, where the Joint Session was supposed to convene to certify the Electoral College vote. The defendants exited the Capitol building several minutes later. U.S. Capitol video surveillance confirmed that the defendants entered the U.S. Capitol building in the afternoon of January 6. They returned to Florida two days later, on January 8, 2021.

Based on their actions on January 6, 2021, the defendants are charged with four offenses: (1) Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1); Knowingly Engaging in Disorderly or Disruptive

Conduct in any Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G).  ECF No. 1.

## ARGUMENT

The defendants seek dismissal of the criminal Information against them on the ground that the facts alleged in the affidavits in support of the initial criminal complaints "fail to sufficiently lay out specific facts which would provide a basis of probable cause to charge the Defendants with the crimes listed." ECF No. 47 at 3.  The defendants' evidentiary challenge is procedurally flawed and substantively meritless.

**I.      Legal Standards**

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation.  *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment).  Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)).  The "key question" is whether "the allegations … , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

3

## II. The Defendants' Probable Cause Challenge Is Procedurally Flawed

The defendants' motion fails, first and foremost, because it attempts to raise a claim—*i.e.*, that the criminal Information charging the defendants with misdemeanor offenses is not supported by probable cause—that has no place in federal criminal procedure at this juncture, under Federal Rule of Criminal Procedure 12 or otherwise.

Under the Federal Rules of Criminal Procedure, a preliminary hearing—when one is available—is the sole vehicle to determine, before trial, whether a criminal charge is supported by probable cause. *See* Fed. R. Crim. P. 5.1; *accord* 18 U.S.C. § 3060. But the Federal Rules of Criminal Procedure also specifically provide that the filing of an Information, like the grand jury's return of an indictment, terminates a defendant's right to a preliminary hearing. *See* Fed. R. Crim. P. 5.1(a) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing *unless* … (2) the defendant is indicted [or] (4) the government files an information charging the defendant with a misdemeanor" (emphasis added)); 18 U.S.C. § 3060 (same). In other words, "in misdemeanor prosecutions based on an information, in the interests of judicial efficiency and a speedy disposition of the action, the determination of probable cause to stand trial is merged with the trial on the merits." *United States v. Brasch*, No. 95-cr-865, 1996 WL 363177, at *2 (S.D.N.Y. July 1, 1996).

Federal Rule of Criminal Procedure 12, upon which the defendants rely, confirms that the defendants' probable cause claims contravene basic federal criminal procedure. The defendants observe (ECF No. 47 at 6) that Rule 12 motions may raise "a defect in the indictment" (or, as here the Information), including "lack of specificity" and "failure to state an offense." But the defendants' motion does none of these things. In fact, the defendants' motion barely mentions the Information filed in this case (ECF No. 1) at all. And the defendants' motion certainly does not show that that Information—which closely tracks the applicable statutory language—is somehow

4

defective. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (reaffirming that it is generally sufficient for a charging document to "echo[] the operative statutory text while also specifying the time and place of the offense."). Instead, the defendants' purported Rule 12 motion contends that the allegations "provided by the affiant *in the Statement of [F]acts*" supporting the criminal complaints and arrest warrants "fail to show how the Defendants can be charged with any of the counts included." (ECF No. 47 at 8 (emphasis added). Contrary to the premise of the defendants' theory, however, the Court's review on a Rule 12 "is limited to 'the four corners'" of the charging instrument. *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotation marks and citation omitted).

This Court should therefore reject the defendants' attempt to litigate probable cause, without reaching the merits.

## III. In Any Event, the Affidavits Submitted in Support of the Defendants' Complaints and Arrests Amply Establish Probable Cause

A. In any event, the defendants' attacks on the complaint affidavits are substantively meritless. The probable-cause standard "is not a high bar," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted), and "is less than a preponderance of the evidence," *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016). Ultimately, a magistrate need only determine whether "reasonable inferences" from the evidence described in the affidavit establish a "fair probability" that the defendants committed the offenses charged in the complaint. *Illinois v. Gates*, 462 U.S. 213, 238, 240 (1983). Because the probable-cause standard deals not "with hard certainties, but with probabilities," *id.* at 231 (citation omitted), the facts presented to the magistrate need only "'warrant a person of reasonable caution in the belief'" that the defendant committed a criminal offense. *Florida v. Harris*, 568 U.S. 237, 243 (2013) (brackets and citation omitted).

5

The affidavits in support of the criminal complaints against the defendants easily clear these standards. The affidavits established that, on January 6, 2021, (i) a restricted perimeter was put in place within the Capitol Grounds through "[p]ermanent and temporary security barriers and posts manned by U.S. Capitol Police"; (ii) "[o]nly authorized people with appropriate identification were allowed access inside the U.S. Capitol"; and (iii) "the exterior plaza of the U.S. Capitol was also closed to members of the public" *United States v. David John Lesperance*, No. 21-cr-439, ECF No. 1-1 ("Lesperance Compl.") at 1 (June 21, 2021); *United States v. James Varnell Cusick*, No. 21-cr-441, ECF No. 1-1 ("James Cusick Compl.") at 1 (June 21, 2021); *United States v. Casey Cusick*, No. 21-cr-440, ECF No. 1-1 ("Casey Cusick Compl.") at 1 (June 21, 2021). The affidavits further established that, on January 6, "a joint session of the United States Congress convened at the U.S. Capitol … to certify the vote count of the Electoral College of the 2020 Presidential Election," "with Vice President Mike Pence present and presiding over the Senate." Lesperance Compl. 1; James Cusick Compl. 1; Casey Cusick Compl. 1. The affidavits established that, despite these restrictions, a mob "forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts" and that, as a result, Congress' proceeding was suspended, the Vice President and Members of Congress were evacuated, and the proceeding did not resume until later in the evening of January 6. Lesperance Compl. 1; James Cusick Compl. 1; Casey Cusick Compl. 1.

With respect to the defendants, in particular, the affidavits provide ample basis to conclude that, on January 6, each of the defendants joined the riot at the Capitol. The affidavits establish that each of three defendants entered and remained within the restricted area surrounding the Capitol—indeed entered and remained in the Capitol Building itself—joining the rioting mob.

Lesperance Compl. 2-5; James Cusick Compl. 2-6; Casey Cusick Compl. 2-6. All three defendants were caught on U.S. Capitol Police's CCTV system as they entered the Capitol Building through the Senate Wing Door. Lesperance Compl. 5; James Cusick Compl. 6; Casey Cusick Compl. 6. All three defendants were later caught on law enforcement's body-worn cameras inside the Capitol Building. Lesperance Compl. 4; James Cusick Compl. 6; Casey Cusick Compl. 6. One of the defendants (Lesperance) also admitted during an interview with law enforcement that, on January 6, 2021, he went to the Capitol. Lesperance Compl. 2. During the same interview, Lesperance also admitted that he went to the Capitol with his pastor, whom law enforcement identified as James Varnell Cusick Jr. Lesperance Compl. 2; James Cusick Compl. 2; Casey Cusick Compl. 2. And all three defendants' cell-site location data from January 6 confirmed that their cell phones connected to towers that provided service to the U.S. Capitol. Lesperance Compl. 3; James Cusick Compl. 3; Casey Cusick Compl. 3.

These facts amply supported the conclusion that all three defendants knowingly entered and remained within the Capitol's restricted area without authorization and that they joined a riot that was unfolding therein, thereby engaging in disorderly and disruptive conduct and parading, demonstrating, or picketing within the Capitol.

B.   None of the defendants' responses has merit. First, the defendants attempt to segregate various pieces of evidence cited in the affidavits and claim that, in insolation, those pieces of evidence do not amount to probable cause. (ECF No. 47 at 8-9). But the "totality-of-the-circumstances test" that governs probable cause determinations "'precludes this sort of divide-and-conquer analysis.'" *Wesby*, 138 S. Ct. at 588.

Second, the defendants claim that the affidavits "essentially accuse[] the Defendants of crimes by mere account of their presence"—which, in the defendants' view, amounts to

7

impermissible "indirect and circumstantial evidence." (ECF No. 47 at 9-10, 12-14, 14-15). But the defendants have it exactly backwards: fueling a riot by joining—*i.e.*, being intentionally "presen[t]"—and participating in that riot plainly supports the disorderly conduct charges against the defendants, especially under the flexible probable cause standard. And nothing prevents the government from carrying its burden, in part (as here) or in whole, through circumstantial evidence—at the charging stage or even at trial. *See, e.g.*, *United States v. Clark*, 184 F.3d 858, 863 (D.C. Cir. 1999) (even in assessing sufficiency of the evidence after trial, "'the prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact'").

Third, the defendants complain that the affidavits did not show that they had "individual notice" that they were entering a restricted area. To the contrary, the affidavits plainly alleged that "[r]estrictions around the U.S. Capitol include[d] permanent and temporary security barriers and posts manned by U.S. Capitol Police" and that "[o]nly authorized people with appropriate identification were allowed access inside the U.S. Capitol"—all of which necessarily put the defendants on notice as they entered the restricted area. Lesperance Compl. 1; James Cusick Compl. 1; Casey Cusick Compl. 1. Lesperance, moreover, admitted during an interview with investigators that, "while he was located at the front of the U.S. Capitol, he witnessed law enforcement officers arriving and hitting their shields with their batons." Lesperance Compl. 2. He also admitted that, "while heading to the door of the U.S. Capitol, he witnessed a law enforcement officer deploy a flashbang device." *Id.* And the video footage excerpted in the affidavits made it unmistakable that, when they entered the Senate Wing Door, the defendants

were joining an ongoing riot. Lesperance Compl. 5; James Cusick Compl. 6; Casey Cusick Compl. 6.

Fourth, the defendants complain (ECF No. 47 at 15) that "there is nothing in Count three (or the indictment at all) that alleges, let alone implies, that the Defendants took any action to impede Congress's certification of the electoral vote."[1] But, again, even at trial, the government may prove its case entirely through circumstantial evidence, even as to *mens rea* elements. Here, the fact that the defendants traveled from Florida to Washington, D.C. ahead of January 6, made their way through a mob, and entered the Capitol Building at the precise time and place when the Joint Session of Congress was supposed to convene to certify the Electoral College vote amply supports the inference that the defendant intended to impede, disrupt, or disturb the orderly conduct of a session of Congress. *See* 40 U.S.C. 5104(e)(2)(D).

Finally, the defendants claim that the complaints insufficiently specify how they "parad[ed], demonstrat[ed], or picket[ed]" in any Capitol Building. (ECF No. 47 at 18). They are again mistaken. The CCTV footage excerpted in the affidavits captures the defendants as they parade around the Senate Wing Door in the midst of what is obviously an unlawful takeover. Lesperance Compl. 5; James Cusick Compl. 6; Casey Cusick Compl. 6. That alone supports the charge in Count Four.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss should be denied.

March 10, 2023                    Respectfully submitted,

---

[1] The defendants repeatedly refer to the charging document in this case as an "indictment." *See, e.g.*, ECF No. 47 at 1, 8, 10, 15, 16, 18. The defendants were charged by information, not indictment.

9

```
                         MATTHEW M. GRAVES
                         UNITED STATES ATTORNEY
                         D.C. Bar No. 481052

               By:       /s/ Francesco Valentini
                         Francesco Valentini
                         D.C. Bar No. 986769
                         Trial Attorney
                         United States Department of Justice, Criminal Division
                         Detailed to the D.C. United States Attorney's Office
                         601 D Street NW
                         Washington, D.C.  20530
                         (202) 598-2337
                         francesco.valentini@usdoj.gov
```