**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**DAVID JOHN LESPERANCE, CASEY CUSICK, and JAMES VARNELL CUSICK, JR.,**<br><br>**Defendants.** | **Criminal Action No. 21-575 (JDB)** |

## MEMORANDUM OPINION & ORDER

Defendants David John Lesperance, Casey Cusick, and James Varnell Cusick are each charged with four misdemeanor offenses related to the breach of the United States Capitol on January 6, 2021.  Defendants have filed two motions seeking dismissal of the criminal information and a motion for transfer of venue.  See Defs.' Mot. to Dismiss on First Amendment Grounds [ECF No. 45] ("First Amend. Mot."); Defs.' Mot. to Dismiss for Failure to State a Claim [ECF No. 47] ("Mot. to Dismiss"); Defs.' Mot. to Change Venue [ECF No. 46] ("Venue Mot.").  For the reasons set forth below, the Court will deny defendants' motions to dismiss the case and their motion to transfer venue.

## Background

According to the government, defendants traveled to Washington, D.C. from Florida on January 5, 2021.  See Gov't's Opp'n to First Amend. Mot. [ECF No. 49] ("Opp'n to First Amend. Mot.") at 2.  On January 6, while defendants were in Washington, the U.S. Congress was convened in the Capitol building for a joint session to certify the Electoral College vote count.  Statement of Facts [ECF No. 13-1] ("Lesperance SOF") ¶ 3; Statement of Facts [ECF No. 13-2] ("C. Cusick

1

SOF") ¶ 3; Statement of Facts [ECF No. 13-3] ("J. Cusick SOF") ¶ 3.[1]  The joint session began at

approximately 1:00 p.m. and was supposed to continue throughout the afternoon.  <u>See</u> Lesperance

SOF ¶ 3.  In the early afternoon, a large crowd gathered outside the Capitol.  <u>Id.</u> ¶ 4.  Despite the

presence of barricades and U.S. Capitol Police ("USCP") attempting to keep the protesters out of

the Capitol and away from the building, the crowd overwhelmed the USCP and forced their way

into the Capitol around 2:00 p.m.  <u>Id.</u> ¶¶ 4–5.  Shortly after, around 2:20 p.m., members of the

House of Representatives and Senate, as well as then-Vice President Michael Pence, were forced

to evacuate and effectively suspend the joint session.  <u>Id.</u> ¶ 6.

The government asserts that defendants walked past law enforcement officers—who were

carrying shields and batons and, in one instance, deploying a "flashbang"—and entered the Capitol

building shortly after 3:00 p.m. through the Senate Wing Door, which was adjacent to windows

that had previously been broken by rioters.  Opp'n to First Amend. Mot. at 2.  They allegedly

remained inside "roaming the halls of the Capitol Building" for several minutes before departing.

<u>Id.</u>  Defendants' presence inside the Capitol that day is corroborated by video surveillance, law

enforcement body-worn camera footage, cell phone location data, photos with geolocation data,

and Lesperance's statements to investigators.  <u>See</u> Lesperance SOF ¶¶ 10–11, 13–15; J. Cusick

SOF ¶¶ 11, 14–16; C. Cusick SOF ¶¶ 10, 13–16.

Defendants are each charged by information with the same four misdemeanors related to

their actions on January 6, 2021: entering and remaining in a restricted building, in violation of

18 U.S.C. § 1752(a)(1) (Count One); disorderly and disruptive conduct in a restricted building, in

violation of 18 U.S.C. § 1752(a)(2) (Count Two); violent entry and disorderly conduct in a Capitol

Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and parading, demonstrating,

---

[1] These statements of facts can also be found at <u>United States v. Lesperance</u>, No. 21-cr-439, ECF No. 1-1; <u>United States v. Cusick, Jr.</u>, No. 21-cr-441, ECF No. 1-1; and <u>United States v. Cusick</u>, No. 21-cr-440, ECF No. 1-1.

or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four).  See Information [ECF No. 1].

On February 3, 2023, defendants filed a motion to dismiss the case against them on First Amendment grounds, see First Amend. Mot., a motion to dismiss all counts for "failure to state a claim," see Mot. to Dismiss, and a motion to change venue, see Venue Mot.  The government opposes each motion.  See Opp'n to First Amend. Mot.; Gov't's Opp'n to Venue Mot. [ECF No. 50] ("Opp'n to Venue Mot."); Gov't's Opp'n to Mot. to Dismiss [ECF No. 54] ("Opp'n to Mot. to Dismiss").  Defendants replied in support of both motions to dismiss.  See Defs.' Reply in Supp. of First Amend. Mot. [ECF No. 52] ("First Amend. Reply"); Defs.' Reply to Opp'n to Mot. to Dismiss [ECF No. 55] ("Reply ISO Mot. to Dismiss").  Defendants' motions are now ripe for decision.

## Analysis

### I.       Motion for Change of Venue

Defendants filed a motion seeking a change of venue based on alleged bias in the D.C. jury pool.[2]  Venue Mot. at 1.  This Court has denied every change-of-venue motion filed in a January 6 case before it.  See, e.g., Feb. 22, 2023 Order at 5–6, United States v. St. Cyr, Crim. A. No. 22-185 (JDB) (D.D.C. Feb. 22, 2023), ECF No. 63;  United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *6–7 (D.D.C. Dec. 28, 2022); United States v. Nassif, Crim. A. No. 21-421 (JDB), 2022 WL 4130841, at *8–10 (D.D.C. Sept. 12, 2022); United States v. Brock, Crim. A. No. 21-140 (JDB), 2022 WL 3910549, at *4–8 (D.D.C. Aug. 31, 2022); May 4, 2022 Min. Entry, McHugh, Crim. A. No. 21-453 (JDB) (D.D.C. May 4, 2022).  In fact, as the government

---

[2] Defendants' filing implies that they wish to have their trial transferred to either Nebraska or North Dakota.  See Venue Mot. at 25 (attached report describing defendants' motion as one "for change of venue to Nebraska or North Dakota").  Defendants offer no justification for selecting those particular states, nor can the Court identify one, as all defendants reside in Florida.

notes, every judge in this District to have ruled on such a motion in a January 6 prosecution has denied it. Opp'n to Venue Mot. at 1 n.2 (collecting cases). And dozens of January 6 cases have now been tried to juries in this District after careful voir dire of prospective jurors. The Court will also deny this motion.

Defendants raise several arguments that the "District of Columbia jury pool is biased against January 6th defendants." Venue Mot. at 5 (cleaned up). They claim that the D.C. jury pool "is <u>always</u> pro-government, pro-democrat, and anti-republican," adding that jurors' "lives and . . . careers depend on the federal government being large and expensive" such that "[i]f Republican firebrands ever gain traction, their entire lives and careers will be ended." <u>Id.</u> at 5–6 (cleaned up). This leads defendants to believe that, for D.C. jurors, "returning a verdict 'not guilty'" against these three defendants "is a loss for their employer or the institution driving their livelihood and community." <u>Id.</u> at 6.

The motion broadly alleges that D.C. residents primarily support Democratic politicians and, therefore, are politically biased against January 6 defendants, <u>id.</u> at 6–8; that "virtually every prospective juror[] has been exposed to a constant barrage of inflammatory accounts" from the media and the U.S. House Select Committee to Investigate the January 6 Attack on the United States Capitol, <u>id.</u> at 8–9; and that members of the jury pool view themselves as victims of the events of January 6, 2021, <u>id.</u> at 10–11. In arguing that D.C. jurors are biased, defendants rely primarily on Google analytics data, suspect polling, and a questionable "expert" report.[3]

---

[3] As this Court has noted, "public opinion polling commissioned by one party is often less probative than a 'recorded, comprehensive voir dire examination conducted by the judge in the presence of all parties and their counsel.'" <u>Brock</u>, 2022 WL 3910549, at *7 (quoting <u>United States v. Haldeman</u>, 559 F.2d 31, 64 n.43 (D.C. Cir. 1976)). Defendants refer to two polls, one conducted by John Zogby Strategies, <u>see</u> Venue Mot. at 7 & n.10, and another conducted by Select Litigation, <u>see id.</u> at 11–12. Both have already been considered and rejected by courts denying venue motions from other January 6 defendants. <u>See, e.g.</u>, <u>Brock</u>, 2022 WL 3910549, at *7 ("[T]he [Select Litigation] survey questions are neither reliable enough to act as a substitute for voir dire, nor convincing enough to merit a change in venue at this stage."); <u>United States v. Garcia</u>, Crim. A. No. 21-0129 (ABJ), 2022 WL 2904352, at *11–12 (D.D.C. July 22, 2022) ("The Zogby survey contains poorly written questions that produced unreliable,

The Court has considered and rejected each of defendants' arguments in one form or another in prior cases.  See, e.g., Sheppard, 2022 WL 17978837, at *6 ("This is a diverse district with hundreds of thousands of potential jurors who are able to judge [a January 6 defendant's] guilt or innocence with an open mind, and any potential issues [a defendant] flags, such as employment with the federal government or unshakable biases against January 6 defendants, can be addressed during voir dire."); id. at *7 ("The media coverage of the events of January 6 has been neither 'blatantly prejudicial' nor localized to Washington, D.C."); id. (rejecting allegations of jury pool bias, in part, because "in the highest-profile January 6 case to go to trial, United States v. Rhodes, a Washington, D.C. jury acquitted every defendant of some counts"); Brock, 2022 WL 3910549, at *6 (noting with regard to "anecdotes of trauma felt by D.C. residents" that "the Court has no basis to conclude such trauma is felt by a substantial portion of the venire, nor does the motion offer a reason to believe those who were traumatized to the point of bias would fail to report that during voir dire questioning"); id. ("[T]he fact that a majority of Washington, D.C. residents have historically voted for Democrats is not 'at all pertinent to venue.'" (quoting Haldeman, 559 F.2d at 64 n.43)); id. at *8 ("[T]he content and nature of the January 6th coverage,

---

uninformative answers. . . .  Zogby's loaded questions illustrate exactly why the D.C. Circuit is of the view that carefully crafted, non-leading questions approved by a neutral judge are more likely to uncover bias than questions formulated by a consultant paid by one party.").  These polls raise the same concerns in this case.

Defendants' "expert witness report" fares no better.  The report is authored by Treniss J. Evans III, a self-professed "leading expert serving in various capacities to educate the public on the January 6th event."  Venue Mot. at 26.  Although his report does not disclose this, Evans is himself a convicted January 6 defendant and was represented in his prosecution by John Pierce, defense counsel in this case.  See United States v. Evans, Crim. A. No. 21-225 (DLF).  The "expert report" provides no authorities or support for its bold claims, nor does it describe its methods of analysis; instead, it vaguely refers to an unidentified "report" and "[s]amples [that] were submitted to numerous researchers and to data experts."  Venue Mot. at 26.  It reads substantially more like a political manifesto than an expert report.  See, e.g., id. at 28 ("Government employees are the only sector of the population who support socialism, according to polls."); id. at 29 ("The D.C. jury pool believes January 6th protestors are guilty resulting from information they have consumed supported by the one-sided narrative of the House Select Committee and their politically motivated investigation and findings."); id. ("[T]he [D.C. jury] pool believes that January 6th defendants are truly dangerous and must be harmed, destroyed, or caged . . . ."); id. at 30 (arguing that a transfer of venue is warranted because "[c]ompared to other cities, [the] D.C. jury pool is disproportionately African American" and, accordingly, "[a] majority believe January 6th defendants are 'White Supremacists'").  A document like this one has no value as an expert filing, and the Court gives it no consideration.

including the Select Committee hearings, are not so inflammatory as to bias the entire Washington, D.C. community.").

Defendants offer no new arguments that persuade the Court to deviate from its prior determinations.  Accordingly, the Court adopts the reasoning from its prior decisions and will deny the motion for a change of venue.

## II.   Motion to Dismiss for "Failure to State a Claim"

Defendants ask the Court to "dismiss all charges against them pursuant to Federal Rules of Criminal Procedure 7(c)(1) and 12(b)" and file what they call a "motion to dismiss all the counts for failure to state a claim." Mot. to Dismiss at 1.  Failure to state a claim is a ground for dismissal of a civil complaint, see Fed. R. Civ. P. 12(b)(6), but it is not enumerated in the Federal Rules of Criminal Procedure as a reason to dismiss a criminal information, see Fed. R. Crim. P. 12.  The motion primarily argues that the government lacked probable cause to charge defendants but, at one point, also states that "[p]retrial motions may challenge 'a defect in the indictment,' including 'lack of specificity' and 'failure to state an offense.'"  Mot. to Dismiss at 6 (quoting Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v)).  The Court will deny the motion for dismissal on each of these possible grounds.

### A.  Probable Cause

The crux of defendants' argument seems to be that, based on the contents of the affidavits supporting the criminal complaints against them, the government did not have "probable cause to charge the Defendants with the crimes listed."  Mot. to Dismiss at 3; see id. at 1 (moving "to dismiss the charges against them based on . . . lack of probable cause" and "ask[ing] for a preliminary hearing to determine if probable cause exists for any of the counts alleged by the

government towards them"); id. at 5 ("[T]he affiant . . . fails to show what if anything would establish probable cause to charge the Defendants in the first place.").

As the government notes, the requirement for a preliminary hearing on probable cause terminates upon the filing of an information.[4]  See Opp'n to Mot. to Dismiss at 4; Fed. R. Crim. P. 5.1(a) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the government files an information charging the defendant with a misdemeanor . . . ." (emphasis added)); 18 U.S.C. § 3060(e) ("No preliminary examination [to determine whether there is probable cause to believe that an offense has been committed and that the arrested person has committed it] shall be required . . . if . . . an information is filed against such person in a court of the United States.").  Some courts have explained that "by use of the information for lesser crimes . . . the issues of probable cause and guilt become merged and tried together" at trial.  United States v. Funk, 412 F.2d 452, 455 (8th Cir. 1969); United States v. Saussy, 802 F.2d 849, 851 (6th Cir. 1986) (quoting Funk, 412 F.2d at 455); cf. M. A. P. v. Ryan, 285 A.2d 310, 314 (D.C. 1971) ("A properly filed information[,] like an indictment[,] establishes probable cause.").  Accordingly, no inquiry into probable cause is required at this time.

In any event, the Court easily concludes that the government has met its burden to show probable cause here.  Probable cause requires "a reasonable ground for belief of guilt," which "must be particularized with respect to the person to be searched or seized."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).  The probable-cause standard "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal

---

[4] Defendants' motion exclusively refers to the charging document as an "indictment," but all three defendants were charged by criminal information in this case.  See Information.

quotation marks omitted).  "[P]robable cause deals with probabilities and depends on the totality of the circumstances." Id. (internal quotation marks omitted).

The statements of facts describing defendants' conduct aver that the Capitol building and grounds were closed to the public and were surrounded by barriers manned by USCP.  A joint session of Congress—over which the Vice President presided—was underway to certify the Electoral College vote.  A violent mob forced entry into the U.S. Capitol, resulting in the suspension of the congressional proceeding and the evacuation of the Vice President and Congress. Congress was not able to reconvene until later in the evening of January 6.  The affidavits cite video surveillance, law enforcement body-worn camera footage, cell phone location data, photos with geolocation data, and one defendant's own statements to investigators, which provide more than sufficient probable cause to conclude that each defendant joined the mob at the Capitol and entered and remained in the Capitol building.  See, e.g., Lesperance SOF ¶¶ 10–11, 13–15; see also Mot. to Dismiss at 12 (conceding that "Defendants were inside for . . . ten minutes").  The Court thus agrees with the government that, for the purpose of establishing probable cause to charge defendants, "[t]hese facts amply supported the conclusion that all three defendants knowingly entered and remained within the Capitol's restricted area without authorization and that they joined a riot that was unfolding therein, thereby engaging in disorderly and disruptive conduct and parading, demonstrating, or picketing within the Capitol."  Opp'n to Mot. to Dismiss at 7.

The defense's primary grievance is that "[t]he Statement of Facts essentially accuses the Defendants of crimes by mere account of their presence" "in a public building" and "do not show any violence or aggressive conduct exhibited by the alleged Defendants, nor do they mention how long they were actually in the Capitol and why they were there to begin with."  Mot. to Dismiss at 9, 12.  But this characterization understates the allegations and overstates the requirements for

probable cause.  The government does not claim that defendants were merely present; although it does not allege violence on the part of defendants specifically, it claims they were part of the large mob that had overwhelmed police in order to enter a restricted building, that they remained inside for at least 10 minutes, and that Congress did not reconvene until much later in the day, after all members of the mob—including defendants—were gone.  As one judge in this District eloquently explained,

> [j]ust as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood.  Only when all of the floodwaters subside is order restored to the field.  The same idea applies in these circumstances.  Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption.

United States v. Rivera, 607 F. Supp. 3d 1, 9 (D.D.C. 2022).

The Court is similarly unpersuaded by defendants' argument that the information must be dismissed because "[a]ll of these acts alleged by the Government also occurred after Congress and the members engaged in the proceeding had already been evacuated for the day."  Mot. to Dismiss at 19; see id. at 12, 17.  Courts have rejected this same argument in other January 6 cases, explaining that "proceedings could not recommence until the entire building was secured and cleared of rioters" and "even the presence of one unauthorized person in the Capitol is reason to suspend Congressional proceedings."  Rivera, 607 F. Supp. 3d at 9; see also Brock, 2022 WL 3910549, at *3 ("There is no requirement that the government allege actions taken before the joint session was suspended; nor a requirement that it allege [the defendant] entered the Capitol at any time, let alone before the joint session was suspended.").

In essence, defendants' motion expresses their frustration that the government's initial charging documents did not meet the factual burden required for conviction at trial.  See, e.g., Reply ISO Mot. to Dismiss at 3 ("Each of the misdemeanor counts alleged against Defendants require that certain elements be proven beyond a reasonable doubt.").  For example, they

repeatedly complain that "the Government's case is based solely on indirect and circumstantial evidence designed to suggest that the Defendants are guilty without actually having to prove it." Mot. to Dismiss at 10; see id. at 12 (claiming that the statements of facts only accuse defendants of being "inside for barely ten minutes" and "acting like any other tourist[s] would").  As another example, they frequently note that the government has not yet offered direct proof of their mental states.  See id. at 10–11, 14–15, 16.  But, as explained above, the allegations are more than sufficient at this stage to establish probable cause.  For one, "the law permits the factfinder to infer that a person intends the natural and probable consequences of their actions," and, as one court explained, "the probable and natural consequence of breaking into the United States Capitol is the disruption of Congressional business and proceedings." Rivera, 607 F. Supp. 3d at 8.  Further, the government alleges plentiful circumstantial evidence that could support a reasonable inference that defendants knew the Capitol building was restricted: defendants walked past officers in riot gear deploying flashbangs and entered the Capitol through doors flanked by shattered window as part of a large mob.  See Opp'n to First Amend. Mot. at 2; cf. Rivera, 607 F. Supp. 3d at 7–8 (finding defendant guilty of entering and remaining in a restricted building based on circumstantial evidence of mens rea).[5]

The government will be required to prove defendants' guilt—including mens rea—beyond a reasonable doubt at trial.[6]  If defendants wish to raise concerns about the sufficiency of the evidence presented at trial, they may do so following the presentation of the government's case. But the Court will not require the government to defend against what effectively amounts to a Rule

---

[5] To be clear, the Court does not conclude that the government has proven any element of any charge.  But the government's allegations are clearly sufficient to support probable cause to charge defendants.

[6] Even at trial, the government is entitled to prove its case based entirely on circumstantial evidence.

29 motion[7] based on the allegations contained in affidavits supporting the criminal complaints before trial has even begun.  The Court accordingly will not dismiss the information on probable cause grounds.

### B.  Lack of Specificity

Defendants' arguments fare no better if construed as challenges for lack of specificity.  A criminal defendant may file a motion to dismiss a criminal information against him for lack of specificity.  See Fed. R. Crim. P. 12(b)(3)(B)(iii).  An information must set forth only "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The information "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).  "It is generally sufficient that an [information] set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  Id. (quoting United States v. Carll, 105 U.S. 611, 612 (1881)); see also Haldeman, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established.").  Defendants make a handful of arguments that could be construed to allege a lack of specificity.

First, as to Count One—which charges defendants with entering and remaining in a restricted building in violation of 18 U.S.C. § 1752(a)(1)—defendants contend that "well-settled black-letter law relating to trespass requires that an individual must have actual, individualized,

---

[7] A defendant may move for "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" "[a]fter the government closes its evidence or after the close of all the evidence."  Fed. R. Crim. P. 29(a).

personal notice that a property is restricted before an individual can be accused of trespassing."
Mot. to Dismiss at 10.  This seems to be an argument that the information does not "contain[] the
elements of the offense charged."  Hamling, 418 U.S. at 117.

This argument is unsuccessful for several reasons.  First, in support of this proposition,
defendants cite to Illinois, Georgia, and Texas statutes prohibiting "criminal trespass."  See Mot.
to Dismiss at 10 n.4.  Defendants are not charged under those state statutes, and it is not clear to
the Court why they would be relevant here.  Second, to find defendants guilty of the federal offense
with which they are charged, a jury would need to determine that they "entered or remained in a
restricted building without lawful authority to do so" and that they "did so knowingly."  Rivera,
607 F. Supp. 3d at 7; see, e.g., Final Jury Instructions, United States v. St. Cyr, Crim. A. No. 22-
185 (JDB) (D.D.C. Mar. 10, 2023), ECF No. 93 ("St. Cyr Jury Instructions") at 29.  The
information alleges precisely that.  See Information at 1 (alleging that defendants "did knowingly
enter and remain in the United States Capitol, a restricted building, without lawful authority to do
so").  Although this is a "bare-bones" allegation, it "sets forth the elements of the offense and fairly
informs [defendants] of the charge against which [they] must defend."  United States v. McHugh
("McHugh II"), Crim. A. No. 21-453 (JDB), 2023 WL 2384444, at *2 (D.D.C. Mar. 6, 2023).[8]

Next, in reference to Count Two—which charges defendants with disorderly and disruptive
conduct in a restricted building in violation of 18 U.S.C. § 1752(a)(2)—defendants argue that "the
conduct listed in the [information] that [is] meant to charge the Defendants [is] too vague that [it]
fail[s] to put the Defendants on notice of what is prohibited conduct."  Mot. to Dismiss at 15.  But
Count Two of the information adequately sets forth "the elements of the offense charged,"

---

[8] Although irrelevant on a motion to dismiss the information for lack of specificity, as explained above, the
statements of facts also allege substantial circumstantial evidence that the government will introduce to argue that
defendants were, in fact, aware that the Capitol building was restricted on January 6, 2021.

Hamling, 418 U.S. at 117, such that defendants cannot reasonably argue that the information does not "fairly inform[] [them] of the charge against which [they] must defend," id.[9]

More broadly, defendants' motion focuses nearly exclusively on the statements of fact supporting the criminal complaints and not the information. Defendants offer no compelling argument that the information—which closely tracks the language of the criminal statutes at issue—is defective due to lack of specificity. Although defendants' reply states that "[a]n indictment's failure to recite an essential element of the charged offense requires dismissal of the indictment" and warns that "[t]he complete failure to charge an essential element of a crime is by no means a mere technicality," Reply ISO Mot. to Dismiss at 4 (internal quotation marks omitted), they do not point to any portion of the information that omits an element of a crime. Rather, they pivot back to factual allegations attached to the criminal complaints and claim that "[t]he government does not provide facts sufficient to conclude that Defendants entered and remained in a restricted building with a culpable intent." Id. But this is not an argument that the information lacks specificity—it is a complaint about whether the government stated sufficient facts to show probable cause, which the Court has already addressed.

Accordingly, the Court concludes that "each count sets forth every element of the charged offense, informs [defendants] of the charges against which [they] must defend, and sufficiently protects against double jeopardy concerns." McHugh II, 2023 WL 2384444, at *4. Hence, the Court will not dismiss the information for lack of specificity.

---

[9] As presented to the Court, this argument—which complains that the vagueness of the "conduct listed in the indictment" failed to "put the Defendants on notice" of the charges against them, Mot. to Dismiss at 15—sounds in lack of specificity. However, defendants cite to a case addressing whether a defendant's "alleged conduct . . . fit[s] within the scope of" the charged statute. United States v. Miller, 589 F. Supp. 3d 60, 67 (D.D.C. 2022). To the extent that defendants intended to argue that the statute is vague (rather than the alleged conduct listed in the information) or that their conduct falls outside the scope of the statute, those arguments are addressed in the next section related to failure to state an offense.

### C.  Failure to State an Offense

The Court would also deny defendants' motion if it were construed as a motion to dismiss for failure to state an offense.  A criminal defendant may move pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) to dismiss the information against him for "failure to state an offense."  An information fails to state an offense when "the statutory provision at issue does not apply to the charged conduct or the statutory provision at issue is unconstitutional."  United States v. McHugh ("McHugh I"), 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (citations omitted).  "When considering a motion to dismiss an [information], a court assumes the truth of [the information's] factual allegations," United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015), and asks "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed," United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  In considering this motion, the Court "cannot consider facts beyond the four corners of the [information]."  United States v. Ring, 628 F. Supp. 2d 195, 204 (D.D.C. 2009).

As a preliminary point, as noted above, most of defendants' arguments go to the weight and sufficiency of the evidence in the statements of facts supporting the criminal complaints against them.  Those lines of argument are not relevant to whether the information states an offense because so long as the information itself includes an allegation, the Court must assume that it is true.  For example, defendants argue as to several counts that "[c]riminal charges require more than mere presence as a requisite mental state," Mot. to Dismiss at 13–14, but the information sufficiently alleges that defendants possessed the requisite mens rea, and so it states an offense, see, e.g., Information at 1 (alleging that defendants acted "knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions").  The Court will accordingly not recount each of defendants' many arguments that are premised on the weight of

facts outside of the "four corners" of the information.  Ring, 628 F. Supp. 2d at 204 (internal quotation marks omitted).

Defendants lodge two additional arguments that could relate to failure to state an offense, but neither is successful.  Specifically, defendants appear to argue that Counts One and Two are unconstitutionally vague or overbroad.  For Count One, defendants claim that § 1752(a)(1) "is vague on its face, because without more it does not put the defendant on notice of the crime charged and it attempts to charge the Defendants with mere presence alone."  Mot. to Dismiss at 12. Defendants misstate the statute—it does not criminalize "mere presence."  Contrary to defendants' suggestion, a "tourist . . . taking pictures in a public building, like a museum," would not fall within the scope of the statute.  See id. at 12.  To be convicted under the statute, individuals must "enter[] or remain[] in a restricted building or grounds without lawful authority to do so," and they must "d[o] so knowingly, meaning [they] knew that the building or grounds was restricted and [they] knew [they] lacked lawful authority to enter or remain there."  St. Cyr Jury Instructions at 29; accord § 1752(a)(1) (criminalizing "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so" (emphases added).  The statute clearly puts defendants on notice of the conduct proscribed and, accordingly, is not unconstitutionally vague.

Similarly, defendants also seem to argue in passing that § 1752(a)(2) is impermissibly vague because it fails "to put the Defendants on notice of what is prohibited conduct" and does not "explain what would constitute acts that are disorderly."  Mot. to Dismiss at 15.[10]  Defendants do not flesh out this argument any further, and the Court concludes that "there is no reasonable divergence of opinion" about the meaning of the provision.  United States v. Neely, Crim. A. No.

---

[10] 18 U.S.C. § 1752(a)(2) prohibits "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."

21-642 (JDB), 2023 WL 1778198, at *4 (D.D.C. Feb. 6, 2023).  "[O]rdinary people" would surely have "fair notice," United States v. Bronstein, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (internal quotation marks omitted), that it would be "disorderly or disruptive" to enter the Capitol building without authorization as part of a large, unruly mob.  See Rivera, 607 F. Supp. 3d at 8 ("Even mere presence in an unlawful mob or riot is both (1) 'disorderly' in the sense that it furthers the mob's 'disturb[ing] the public peace' and (2) 'disruptive' insofar as it disturbs the normal and peaceful condition of the Capitol grounds and buildings, its official proceedings, and the safety of its lawful occupants." (emphasis added)).  Accordingly, § 1752(a)(2) is also not unconstitutionally vague.

For these reasons, the Court will not dismiss the information for failure to state an offense.

\*       \*       \*

The Court has considered all the arguments defendants offer in their motion, and it finds them all meritless.  Hence, the Court will deny defendants' motion to dismiss the information due to lack of probable cause, lack of specificity, and failure to state an offense.

### III.   Motion to Dismiss on First Amendment Grounds

Defendants move to dismiss the information based on their belief that all of the offenses with which they are charged violate the First Amendment.  See First Amend. Mot.  With respect to Count One, which alleges a violation of § 1752(a)(1), they first argue—unrelated to the First Amendment—that "there is no law of Congress which makes the Capitol a restricted building." Id. at 3.  They then argue that the government could not restrict the Capitol building because the First Amendment precludes "[any] law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Id. (alterations in original) (internal quotation marks omitted).  With respect to Counts Two and Three, which allege violations of § 1752(a)(2) and § 5104(e)(2)(D) respectively, defendants claim that

the offenses are "unconstitutional . . . because the people have a right to impede the orderly conduct of the Government by First Amendment protected expressive conduct and advocacy." Id. at 5. And finally, as to Count Four, which alleges a violation of § 5104(e)(2)(G), defendants argue that the law is similarly unconstitutional because "[t]he birthright of every American includes the right to parade, demonstrate, and picket for a redress of grievances." Id. at 10. The Court is unpersuaded by these arguments and will accordingly deny the motion.

First, defendants suggest that "there is no law of Congress which makes the Capitol a restricted building." First Amend. Mot. at 3. Setting aside that this is not a First Amendment argument, this claim is simply incorrect under the circumstances of this case. Under 18 U.S.C. § 1752(c)(1)(B), the term "restricted buildings or grounds" refers to "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." This Court has thoroughly explained why the Capitol was a "restricted building or grounds" under § 1752(c)(1)(B) on January 6, 2021, see, e.g., McHugh I, 583 F. Supp. 3d at 29–35, as have numerous other courts in this District, see Opp'n to First Amend. Mot. at 4 (collecting cases). The Court adopts its prior reasoning from McHugh in full.[11]

This Court and others have also rejected defendants' arguments that these criminal statutes violate the First Amendment because they are overbroad and sweep in protected expressive activity.

Under the First Amendment, "a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). A statute may be

---

[11] In reply to this point, defendants primarily dispute whether they knew the Capitol was restricted or whether the USCP did enough to adequately inform them that the Capitol was restricted. See, e.g., First Amend. Reply at 1–5. Such factual disputes will be resolved at trial.

"facially invalid even if [it] also ha[s] legitimate application," City of Houston v. Hill, 482 U.S. 451, 459 (1987), but the overbreadth must be "substantial": "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge," Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984).  "When considering a statute's constitutionality under the First Amendment, the forum to which the statute applies is of great importance."  Nassif, 2022 WL 4130841, at *3.  As described in more detail in Nassif: "The interior of the Capitol building is a nonpublic forum where the government may limit First Amendment activities so long as the restrictions 'are reasonable in light of the purpose of the forum and are viewpoint neutral.'"  Id. at *4 (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985)).  The government "has a legitimate interest in ensuring that the activities of Congress proceed without disruption, so Congress may enact reasonable statutes to further that interest."  Id. (cleaned up).

To begin, this Court has already "conclude[d] that § 5104(e)(2)(G) is both viewpoint-neutral" and "reasonable in light of the purpose served by the forum" and therefore survives First Amendment scrutiny.  Nassif, 2022 WL 4130841, at *5 (quoting Cornelius, 473 U.S. at 806).  The Court reaffirms that conclusion here and adopts in full the reasoning given in Nassif.

Further, this Court agrees with a recent decision by another judge in this District that none of the other relevant statutes violates the First Amendment.  See Mem. Op. at 24–25, 33–35, United States v. Rhine, Crim. A. No. 21-687 (RC) (D.D.C. Jan. 24, 2023), ECF No. 79 ("Rhine Op.").  First, regarding § 1752, the Rhine court found that neither "§ 1752(a)(1) [n]or (a)(2) punish a 'substantial amount of protected speech.'"  Id. at 24 (quoting Virginia v. Hicks, 539 U.S. 113, 118 (2003)).  In fact, § 1752(a)(1), which "merely makes it unlawful to 'enter or remain' in a restricted building or grounds," is simply "not related to the suppression of free expression."  Id. (quoting

United States v. Caputo, 201 F. Supp. 3d 65, 71 (D.D.C. 2016)).   And § 1752(a)(2)—which prohibits certain disorderly and disruptive conduct in restricted buildings—"does not restrict a substantial amount of protected expressive activity in relation to its 'core' of legitimate applications."  Id. at 25 (quoting Smith v. Goguen, 415 U.S. 566, 578 (1974)).   Moreover, the Rhine court held that neither provision is a content-based speech restriction, as their "restrictions are clearly agnostic as to content."  Id. at 26.   This Court agrees with the thorough analysis in Rhine upholding these provisions against a First Amendment challenge.

The Rhine court also upheld 40 U.S.C. § 5104(e)(2)(D) against a similar challenge. Although § 5104(e)(2)(D) in theory "could apply to expressive activity on the grounds outside the Capitol buildings, which the D.C. Circuit has held is a public forum," the provision "is content-neutral, as its prohibitions on 'loud, threatening, or abusive language' and 'disorderly or disruptive conduct' are plainly 'agnostic as to content.'"  Rhine Op. at 33 (quoting City of Austin v. Reagan Nat'l Advert. of Austin, LLC, 142 S. Ct. 1464, 1471 (2022)).   "Accordingly, 'intermediate scrutiny' applies," id. (quoting Edwards v. Dist. of Columbia, 755 F.3d 996, 1001 (D.C. Cir. 2014)), and the Rhine court thus concluded that the statute survives because it "clearly . . . furthers [an] important government interest" in "ensuring public safety and order" and is "narrowly tailored," id. at 34 (internal quotation marks omitted).  The court was "satisfied that any incidental restriction on protected expression caused by § 5104(e)(2)(D) is no greater than necessary" and decided that the provision "leaves open ample alternative channels of communication," namely, "all conduct that is not disorderly or disruptive."  Id. at 34–35.  This Court adopts the reasoning from Rhine and concludes that none of the statutes at issue here are facially invalid under the First Amendment.

For these reasons, the Court will deny the defendants' motion to dismiss the information on First Amendment grounds.[12]

\*      \*      \*

For the foregoing reasons, upon consideration of [45] defendants' motion to dismiss on First Amendment grounds, [47] defendants' motion to dismiss for failure to state a claim, [46] defendants' motion to change venue, and the entire record herein, it is hereby

**ORDERED** that [45] defendants' motion to dismiss on First Amendment grounds is **DENIED**; it is further

**ORDERED** that [47] defendants' motion to dismiss for failure to state a claim is **DENIED**; and it is further

**ORDERED** that [46] defendants' motion to change venue is **DENIED.**

**SO ORDERED.**

---

[12] The Court will briefly address defendants' reply in support of this motion, which is meandering and difficult to understand.  The reply stretches from criticism of the USCP's use of paper signs in light of high infrastructure spending during the Obama Administration and "COVID economy," First Amend. Reply at 2–3, to conspiracy theories insinuating that defendants were entrapped by mysterious "heavily cloaked individuals" who laid in waiting to "leap[] up and remov[e] the bike racks and farm-like mesh fences and discard[] them off the paths so that the signs" that otherwise would have given notice to rioters that the Capitol was restricted were "hidden from view," id. at 3.  At times, it throws a different half-baked theory at the wall every few sentences just to see what sticks, regardless of whether those theories have any relation to the First Amendment claims in the underlying motion.

It goes without saying that a reply is not the place to raise new legal arguments, and the Court finds that the new arguments raised here are meritless.  For example, the reply suggests (with ironic phrasing) that "Counts II, III, and IV are multiplicious, redundant, duplicative, repetitive, the same, and unnecessarily superfluous," First Amend. Reply at 6, apparently raising (for the first time) an argument that the information should be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(i) and (ii).  Even if this argument were properly raised, the Court would reject it, as other courts have done after thorough and convincing analysis.  See, e.g., United States v. Griffith, Crim. A. No. 21-244-2 (CKK), 2023 WL 1778192, at *4 (D.D.C. Feb. 6, 2023) (rejecting argument that the exact same charges are multiplicative).  Much of the reply pertains to arguments made in defendants' other motions, and the Court will not address re-argument of unrelated issues already discussed in those other filings.  The Court could spill much ink attempting to make sense of and respond to defendants' reply, but it suffices to say that the Court has reviewed the hodgepodge of arguments and it is not persuaded to accept any.

_____
/s/
JOHN D. BATES
United States District Judge

Dated:  <u>April 5, 2023</u>