IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>-v-<br><br>**DAVID JOHN LESPERANCE, CASEY CUSICK, and JAMES VARNELL CUSICK, JR.,**<br><br>                    **Defendants.** | Criminal No.:   1:21-cr-575 (JDB)<br><br>**DEFENDANTS RESPONSE AND OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE** |

**DEFENDANTS RESPONSE AND OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE REGARDING CROSS-EXAMINATION OF U.S. SECRET SERVICE WITNESS (ECF 61)**

Defendants herein respond and oppose the government's motion in limine regarding cross-examination of Secret Service Witnesses (ECF #61).

**Background.**

Hundreds of J6ers are charged with 'trespassing'—type charges accusing them of entering and remaining in a restricted area.  18 U.S. Code § 1752, the federal trespassing statute, is being misapplied across all these hundreds of January 6 cases.  Congress never intended such applications when it enacted the law; and prior to the January 6 litigation, no courts had ever allowed such widespread criminal prosecutions as applied in January 6 prosecutions.

The statute reads:

18 U.S. Code § 1752 - Restricted building or grounds

(a)Whoever—

(1)knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

(2)knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

(3)knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or [1]

(4)knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; [2]

(5)knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds;

or attempts or conspires to do so, shall be punished as provided in subsection (b).

(b)The punishment for a violation of subsection (a) is—

(1)a fine under this title or imprisonment for not more than 10 years, or both, if—

(A)the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or

(B)the offense results in significant bodily injury as defined by section 2118(e)(3); and

(2)a fine under this title or imprisonment for not more than one year, or both, in any other case.

**[Most significantly:]**

(c)In this section—

(1)the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A)of the White House or its grounds, or the Vice President's official residence or its grounds;

(B)of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C)of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

(2)the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

By its plain language, this statute was intended to apply to the grounds of the White House, which have ten-foot-tall fencing all the way around.  The White House's nearly unscalable iron fences are so formidable that those who scale them are sometimes attempting "suicide by cop"—expecting to be shot soon after touching the grounds.[1]

The application to the *grounds of the Capitol*, on the other hand, is problematic.  In several cases, courts have held that the Capitol's grounds are to be open to the public and are a free-speech forum area. *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972).  In *Jeannette Rankin Brigade*, a special three-judge panel of the D.C. District Court concluded that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making *Jeannette Rankin Brigade* binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), the D.C. Circuit observed that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner restriction" a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds).

The "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was

---

[1] See Pete Williams, et al, "Secret Service Shoots Man With Gun Near White House Checkpoint," *NBC News*, May 20, 2016, https://www.nbcnews.com/news/us-news/white-house-lockdown-after-nearby-shooting-n577701 (accessed 4/30/2023).

designed—legislating"--is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." *Jeannette Rankin Brigade*, 342 F. Supp. at 584.  Indeed, in *Jeannette Rankin Brigade*, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion."

Prior to January 6, every court to consider the question has recognized that the Capitol Grounds as a whole meet the definition of a traditional public forum: They have traditionally been open to the public, and their intended use is consistent with public expression.

As Chief Justice Marshall wrote in 1819: "[t]he government proceeds directly from the people; is 'ordained and established,' in the name of the people... [and] is emphatically and truly, a government of the people. In form, and in substance, it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit." McCulloch v. Maryland, 17 U.S. 316, 403-05 (1819).  The people own the Capitol—and rule over it; not the other way around.  "It is said to be the right of the citizen of this great country, protected by implied guarantees of its Constitution, 'to come to the seat of government to assert any claim he may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions.'" Crandall v. Nevada, 6 Wallace, 36, 44 (1868).

The statute's reference to "where the President or other person protected by the Secret Service is or will be temporarily visiting" plainly is informed by the definition directly above it "(A)" which specifies "of the White House or its grounds, or the Vice President's official residence or its grounds."  Obviously, the congressional intent was to protect the President and Vice President and their families from being *disturbed in their sleep and living quarters*.

("Temporarily visiting" must be read as <u>the temporary residence</u> of the President or Vice President.)

The statute's reference to "temporarily visiting" cannot be read to prohibit access to a place where the Vice President <u>works daily</u>, meets with people and has an office protected by dozens of armed security staff.  (the Vice President presides over the Senate on a regular basis; so the Capitol cannot be construed as a restricted area as defined in the statute.)  A construction that Capitol grounds can be restricted because the Vice President presides over the Senate plainly violates *Jeannette Rankin Brigade* line of cases.

**Defendants have a right to present evidence and argument regarding the Capitol grounds on Jan. 6.**

Defendants have a right to present evidence and arguments that they did not commit the crimes alleged.  Defendants may present evidence that other persons committed the acts the defendants are accused of.  Defendants may also present evidence that the alleged crimes were not committed at all. *Kyles v. Whitley*, 514 U.S. 419 (1995) (defendants may put on evidence challenging law enforcement investigation, etc.)

**In its zeal to wrongly convict J6ers, the United States is seeking to transform the Capitol into a top-secret, high security prison-like facility.**

In 1971, shortly after the Weather Underground bombed parts of the Capitol, the U.S. Senate Committee on Public Works, Subcommittee on Public Buildings and Grounds issued an official report of its emergency hearing, "*Security on the Capitol Grounds Relating to the Bombing of the U.S. Capitol,*" March 2, 1971, p. 1.  The Senate report stated that "The Capitol . . . is no ordinary building.  It is the seat of the legislative branch of our Government. It is not only a working building, but one of our national shrines and as such must be open to the public. Thus,

unique problems are involved when we consider the security of this building. It . . . must also be freely accessible to the public as a symbol of the national liberty we cherish"). The Senate's sergeant at arms, Robert G. Dunphy, stated that "the Capitol building has always operated with its doors open to all citizens and visitors from all over the world." *Id*. P. 2.

Yet the government in its Motion in Limine seeks to depict the Capitol as a top-security, nearly prisonlike, facility where supersecret plans for protecting the Vice President supercede all defendant rights. The government writes that "the very nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to that agency's ability to protect high-ranking members of the Executive branch and, by extension, national security."

The defendants have a right to put on a defense. And the government cannot limit their defense by claiming evidence of their defense "implicates sensitive information. . ."

Defendants submit that the government's motion in limine is aimed partially at deceiving the Court and potentially the jury regarding the level of "security" on Capitol grounds, and partially at preventing defendants from showing their innocence.

The defendants have a right to ask questions about:

1. Whether anything defendants did exposed the Vice President to any danger.
2. How far away was the Vice President or protectees from defendants?
3. Could the Vice President or protectees see or hear defendants?
4. How many rooms, walls, spaces, or barriers separated the Vice President from defendants?

5. What role did defendants play, if any, in disrupting or changing events of January 6, 2021?

6. What signage, flyers, or other indicators might have indicated any restrictive status to defendants.

7. What staffing or officers was present to indicate any restrictions to defendants.

8. The appearance, circumstances, and setting experienced by defendants.

9. If areas were restricted, what process was followed?

10. Who has or claims authority to restrict areas?

11. Who can end or lift restrictions? What is the process?

12. If barriers or signage was erected, when and how were such barriers or signage moved?

For these reasons, defendants ask for an order DENYING the government's motion in limine.

Dated: May 5th, 2023

Respectfully Submitted,

/s/ *John M. Pierce*
John M. Pierce
John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

Attorney for Defendants

CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, May 6, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

*/s/ John M. Pierce*

John M. Pierce