UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID JOHN LESPERANCE, CASEY CUSICK, and JAMES VARNELL CUSICK, JR.,<br><br>**Defendants.** | Criminal Action No. 21-575 (JDB) |

### ORDER

Before the Court is a renewed motion to admit Roger Roots pro hac vice, filed on June 23, 2023. Mot. for Admission Pro Hac Vice of Roger Roots [ECF No. 72] ("Renewed Mot."). For the reasons that follow, the Court will defer ruling on the motion until the July 6, 2023 pretrial conference.

On June 13, 2023, defense counsel, John Pierce, filed an initial motion seeking to admit Roots pro hac vice. Mot. for Admission Pro Hac Vice of Roger Roots [ECF No. 69]. The Court denied that motion for several reasons. See June 19, 2023 Order [ECF No. 70] ("Roots Order"). To begin, the motion failed to comply with the requirements of Local Criminal Rule 44.1(c). Although it was accompanied by a certificate of good standing from the Rhode Island Supreme Court, that certificate had not "been issued within thirty (30) days of filing." LCrR 44.1(c)(2). Roots and Pierce were undoubtedly on heightened notice of this requirement because Pierce's applications to admit Roots pro hac vice in other cases had been denied over a half dozen times in the past few months alone for outdated certificates of good standing or outright failure to include any certificate. See Roots Order at 3. Roots also failed to state "the number of times [he] ha[d] been admitted pro hac vice in this Court within the last two years," LCrR 44.1(c)(2), and instead

1

falsely averred that he had only applied for pro hac vice admission three times in the past two years when he had actually applied in at least seven cases. See Roots Order at 3–4. Further, the Court expressed concern that Roots failed to disclose serious allegations—specifically, that he had filed a fraudulently altered certificate of good standing when seeking general admission to the bar of this court—despite having disclosed those allegations to another judge in this District a mere month ago. See id. at 4–6. Finally, the Court feared that Roots's joint representation of the three defendants in this case would raise extensive conflicts concerns, and the Court was unwilling to "delay the start of trial in order to allow the resolution of this eleventh-hour, seemingly uncandid motion for admission of second-chair counsel." Id. at 7–8.

The Court denied the initial motion and afforded defense counsel "one opportunity to file a renewed motion to admit Roots pro hac vice if he so chooses." Roots Order at 9. The Court explained that

> [a]ny renewed motion must: (1) remedy the errors identified herein; (2) show cause for why the original motion misrepresented the number of attempts Roots has made to appear pro hac vice in this District and failed to disclose the "complaint" that Roots disclosed to the Thomas Court one month ago; (3) include separate written waivers from each defendant indicating their waiver of conflict-free representation by Roots; and (4) be filed by not later than June 23, 2023.

Id.

On June 23, 2023, Pierce filed his renewed motion to admit Roots pro hac vice. See Renewed Mot. The renewed motion remedies some of the identified errors. Roots has now submitted a certificate of good standing issued within 30 days of the filing of the motion. See Certificate of Good Standing [ECF No. 72-3]. And he now avers that he has applied for admission

2

pro hac vice in this District in eight cases over the past two years and has been admitted in five of those cases so far. See Decl. of Roger Roots [ECF No. 72-1] ("First Roots Decl.") ¶ 5.[1]

The renewed motion also attempts to show cause for the initial motion's shortcomings. Regarding the most serious issue—the potential failure to disclose an ongoing disciplinary proceeding—the renewed motion and its attachments seem to indicate an "understanding that the issue ha[s] been resolved." Decl. of Emily Lambert[2] [ECF No. 72-7] ("Lambert Decl.") ¶ 7.[3]  The Court will cautiously take the filings at their word, however bet-hedging they may be. See Second Roots Decl. ¶ 8 ("I believe the issue has now been resolved in my favor, but I'm not sure.").

As to the other issues—the failure to file timely certificates of good standing on at least seven occasions and the misrepresentation of the number of admission attempts—the renewed motion's attached declarations offer a few excuses. First, they insist that Roots and Pierce were either not responsible for or not aware of the errors and misstatements. See Second Roots Decl. ¶ 6 ("I have never intentionally submitted a Certificate of Good Standing that was out of date as far as I know."); id. ¶ 7 (stating that a "paralegal submitt[ed] an out-of-date or altered certificate in another matter without [Roots's] knowledge" and that Roots "never met the individual in person

---

[1] Despite the Court's admonishment, the renewed motion is still not a model of attention to detail. For example, the motion is made "[p]ursuant to Local Civil Rule 83.2(d)." Renewed Mot. at 1. However, because this is a criminal case, the applicable rule is Local Criminal Rule 44.1(c), which should have been clear given the Court's extensive discussion of how the initial motion failed to meet that rule's requirements. See Roots Order at 1–4, 9. But even if this were a civil case, Local Civil Rule 83.2(c)—which deals with practice by non-members of the bar of this court—would apply, not Rule 83.2(d), which governs practice by attorneys representing the United States and its agencies.

[2] Lambert is a "Client Advocate" at Pierce and Root's law firm and performs paralegal work in her role. Lambert Decl. ¶ 1.

[3] The Court appreciates that the renewed motion attaches a letter from a deputy disciplinary counsel for the Rhode Island Supreme Court explaining that there are "no charges filed against Attorney Roots and there are no complaints pending." Letter [ECF No. 72-4]; see Decl. of Roger Roots [ECF No. 72-5] ("Second Roots Decl.") ¶ 3. It is not clear, however, whether that statement is limited to complaints filed with the Rhode Island bar, or whether it includes complaints related to misrepresentations made to this court, which was the Court's primary concern. See Roots Order at 6 (expressing worry that "the filing of a fraudulent certificate as part of an application for admission to this Court's bar could result in" a "formal disciplinary proceeding").

3

and never knew about or directed the individual regarding the matter"); Decl. of John M. Pierce [ECF No. 72-6] ("Pierce Decl.") ¶ 10 ("I was not aware that Mr. Roots' certificate of good standing was older than 30 days."); id. ¶ 12 ("Mr. Roots had nothing to do with the submission of the older-than-30-days certificate in this matter."); see also Lambert Decl. ¶¶ 5–6 (accepting blame for "not realiz[ing] that the certificate of good standing for Mr. Roots was out of date" and for "inadvertently fil[ing] the wrong declaration of Mr. Roots which contained an outdated number of times he had applied and been admitted by PHV motion in this court").

       The Court is not particularly sympathetic to these excuses. As both attorneys should know, ignorance of a filing's contents is no defense when one's signature is affixed to that filing. See, e.g., United States v. Gomez-Gutierrez, 140 F.3d 1287, 1288–89 (9th Cir. 1998) ("[T]he affixing of a signature is not a mere formality, but rather signifies that the signer has read the document and attests to its accuracy."); cf. Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support . . . ."). This is particularly true when the filings at issue include attorney declarations. See Model Rules of Pro. Conduct R. 3.3 cmt. 3 (Am. Bar Ass'n 2020) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer . . . , may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."). In any event, given that Pierce's motions to admit Roots pro hac vice have been rejected over a half dozen times in recent months for these same reasons, their claimed ignorance strikes the court as deliberate.

The affidavits also express that Pierce, Roots, and their paralegal are overworked given their decision to represent "close to 30 criminal and civil defendants" in cases related to the events of January 6.  Pierce Decl. ¶ 13; see Lambert Decl. ¶¶ 2–4, 8.  While that may be a reason to take on fewer clients, it does not justify abdication of their duties to their current clients and the Court. See Model Rules of Pro. Conduct R. 1.3 cmt. 2 ("A lawyer's work load must be controlled so that each matter can be handled competently.").

All that said, the errors and misrepresentations in the initial motion have now been corrected, and it appears that the Court's primary worry—the undisclosed disciplinary complaint—is no longer a concern.  In light of this Order and the Court's prior Order, Pierce and Roots are now on heightened notice, not only of the requirements for admission pro hac vice, but also of their affirmative duty to ensure the correctness of any and all filings made in this Court and others.  Should the Court ultimately decide to admit Roots pro hac vice, it will not hesitate to take appropriate action in response to any future misrepresentations, lack of candor, or frivolity in this case.  See, e.g., United States v. Howell, 936 F. Supp. 767, 774 (D. Kan. 1996) (revoking pro hac vice admission and noting that the "motion to admit [an attorney] pro hac vice would have been denied at the outset" if not for the attorney's "materially misleading" "omissions and misstatements in his affidavit"); La Michoacana Nat., LLC v. Maestre, 611 F. Supp. 3d 87, 98 (W.D.N.C. 2020) (revoking attorney's pro hac vice admission "due to his violations of his duty of candor").

Finally, the Court must address the conflicts posed by Roots's proposed joint representation of the three codefendants.  As requested, counsel attached separate written waivers signed by each defendant.  See Lesperance's Joint Clients Disclosure & Consent Form [ECF No. 72-8]; C. Cusick's Joint Clients Disclosure & Consent Form [ECF No. 72-9]; J. Cusick's Joint Clients

Disclosure & Consent Form [ECF No. 72-10] (collectively "Waivers"). Unfortunately, these waivers are almost entirely unrelated to the conflicts presented in this case. Although they purport to address a "[c]riminal [m]atter," Waivers at 1, and some of the generalized statements apply broadly to this case, see e.g., id. ("When an attorney represents two or more clients in the same matter, the attorney acts to protect the interests of each Client, which may result in divided, or at least shared, Attorney-Client loyalties."), most of the waivers' disclaimers address conflicts that appear to be relevant only to joint representation of plaintiffs in civil suits for money damages. For example, the waivers discuss conflicts surrounding "settlement issues" and circumstances in which "there is insufficient insurance or assets to cover the damages of each Client[]" resulting in "disputes regarding how to allocate the insurance proceeds or assets between the Joint Clients." Id. at 2. They also warn that "Joint Clients' complaints or statements of claim may include claims for punitive damages, which presents the potential for a conflict inasmuch as an award of punitive damages is not insurable." Id. These alleged conflicts are entirely inapposite to this criminal prosecution.

As defense counsel is well aware from the more than 12 months spent resolving the conflicts posed by his joint representation of these defendants, Roots's representation would raise distinct issues that may arise "during plea bargaining; when defendants have inconsistent defenses at trial; when a defendant wishes to testify at trial; when the government's evidence is more damaging to one codefendant than another; during closing arguments; and at sentencing." Nov. 21, 2022 Order [ECF No. 42] ("Conflicts Order") at 2 (citing R. & R. Regarding Single Att'y Representing Three Co-Defs. in the Same Case [ECF No. 18] ("Conflicts Report") at 10–16); see also Suppl. to Conflicts Report [ECF No. 35]; Second Suppl. to Conflicts Report [ECF No. 39].

There is, of course, some irony to counsel's filing of irrelevant conflicts waivers in response to an order lamenting a lack of attention to detail and inaccurate contents in court filings.

Accordingly, these waivers are not "intelligent and competent," Glasser v. United States, 315 U.S. 60, 71 (1942) (internal quotation marks omitted), as they give no indication that defendants understand and accept the risk of conflicts that could actually arise due to Root's joint representation in this case. The Court is therefore unable to accept these waivers.

Hence, the Court cannot grant the renewed motion to admit Roots pro hac vice at this time. Instead, the Court will defer ruling on the motion until the pretrial conference scheduled for July 6, 2023. If defendants still seek to admit Roots pro hac vice, counsel must file new written waivers signed by each defendant by not later than July 5, 2023. Those waivers must indicate that defendants are knowingly, intelligently, and competently waiving—as to Roots's representation— the specific types of conflicts addressed in the conflicts counsel's reports and the Court's prior colloquies. Pierce, Roots, and all defendants must appear at the pretrial conference to address the renewed motion.

The Court will take this opportunity to reiterate that "Roots could have sought admission at any point during the course of this matter, . . . and it certainly will not delay the start of trial in order to allow the resolution of this eleventh-hour . . . motion for admission of second-chair counsel." Roots Order at 8.[4] Accordingly, Pierce must "be prepared to represent his clients on

---

[4] Although defendants are entitled to "a presumption in favor of [their] counsel of choice," Wheat v. United States, 486 U.S. 153, 164 (1988), that "right is not absolute where a continuance is sought to retain or replace counsel of choice," United States v. Eiland, 738 F.3d 338, 354 (D.C. Cir. 2013); accord Conflicts Order at 4–5. "Rather, the defendant's right 'must be carefully balanced against the public's interest in the orderly administration of justice.'" Eiland, 738 F.3d at 354 (quoting United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978)). And that right is significantly weaker when the continuance is sought to retain second-chair counsel: the D.C. Circuit has explained that "[o]nce a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained" a district court "is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case." Burton, 584 F.2d at 490; see United States v. Gordon, 77 F. Supp. 3d 95, 100 (D.D.C. 2015) (same); see also Burton, 584 F.2d at 498 & n.46 (explaining that whether a defendant "had other competent [lead] counsel, fully familiar with the case and prepared and ready to try it, available to present his defense" is a "significant and weighty

July 10, 2023"—as he "has assured the Court" he will be—regardless of the Court's ruling on the pro hac vice motion. Id.

\*   \*   \*

For the foregoing reasons, upon consideration of [72] defendants' renewed motion to admit Roger Roots pro hac vice, and the entire record herein, it is hereby

**ORDERED** that consideration of [72] the motion is **DEFERRED** until the pretrial conference on July 6, 2023; it is further

**ORDERED** that, if defendants still wish to pursue their motion to admit Roots pro hac vice, they shall file new conflicts waivers that meet the requirements noted herein by not later than July 5, 2023; and it is further

**ORDERED** that Pierce, Roots, and all defendants shall appear at the July 6, 2023 pretrial conference.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:  June 29, 2023

---

factor," particularly when the request to add additional counsel is made "on the eve of trial"). Although it has not been raised expressly, the Court notes its skepticism of any argument that defendants' right to retain their counsel of choice would be violated by refusing to admit Roots pro hac vice at this self-imposed late hour; they have already retained their lead counsel of choice in Pierce.

8